The opinion of the ■court was delivered by
Watkins, J.
On the 24th of May, 1888, the plaintiff was employed and actually engaged in the performance of duty as fireman on a locomotive of one of the trains of the East Louisiana Railroad .Company, running on the road from Covington, in the parish of St. Tammany, to the city of New Orleans.
On that morning the company’s train, on which Mire was os employed, left Covington for New Orleans on schedule time, and en route had passed Pearl River station, running at the usual rate of *387 speed, and had taken the track of the Northeastern Railroad Company and made a distance of one and one-half miles from said station, when, just as the locomotive was in the act of going over a dirt-road crossing, it struck 'a plank or board, which was loose, and lying partly on the track and very near the crossing, and was, thereby, thrown suddenly from the track. By this sudden shock, derailing the tender, locomotive, etc., of the company’s train, the plaintiff was violently thrown upon an adjacent pile of cross-ties, causing a fracture of his left knee and occasioning him great pain and serious injuries.
Plaintiff charges that said plank or board, which caused the accident, “was negligently or carelessly not spiked down, or left loose upon one of the rails of said track by the servants or employés of the New Orleans & Northeastern Railroad Company, for whose acts and omissions the East Louisiana Railroad Company is responsible.” That the latter was, at the time, using and operating the track of the former, from Pearl River station to New Orleans, under a lease, and whose duty it was to furnish a track upon which the lessee’s trains could be, at all times, safely run, and free from risk or hazard to its employés. It is specially averred that the breach of duty on the part of each one of said two corporations was the sole cause of the accident, and the resulting injuries of the plaintiff.
On this generalized statement of facts plaintiff brought suit against the two corporations in solido for $15,000 damages, and from a verdict and judgment for $2500 against each the defendants have appealed.
The questions for solution are, therefore, (1) whether one or both defendants are chargeable with fault, on account of a loose plank or board having been negligently left on one of the rails of the Northeastern Company’s track, by its servants, or employés; and (2) if left in such a position as to have been easily cast or thrown upon the track, by some independent third person, or some responsible, extraneous agency, is one or both of the defendants responsible for the accident and for the plaintiff’s consequent damages?
No fault is charged against or attributed to the officers or employés of the derailed train.
There is no question in the case of any violation, by that company, of a contract of safe carriage of a passenger. No charge is made that the accident happened on account of faultiness in the construction of the Northeastern track, or roadbed; or of faultiness of the *388 material of which it was built; or of its having been in bad condition at the time the accident happened. The fault charged is, that the servants and workmen of the Northeastern Company, at the time of the accident, or just before, being engaged in ballasting its track, had, for that purpose, removed some of the planks from the dirt-road crossing, and negligently failed to spike them down again, and left them loose upon the track, or in such close proximity thereto, that they were thrown upon it by some third person, or by means of some extraneous force, unknown, and thus caused the accident to the train and the injury to the plaintiff.
Suit is brought by one of the servants, or employés of the East Louisiana Company, against that corporation as his employer, and against the Northeastern Company as the lessor of his employer, in solido, for the damage he sustained through the fault or negligence of the servants or employés of the lessor company, and for whose acts and omissions the lessee company is responsible to him.
On this statement of the issues involved, we deem it essential to plaintiff’s recovery that he should establish, by a clear preponderance of proof, first, that there occurred such an accident; second, that thereby he sustained the injuries complained of; and third, that the accident happened through the fault or negligence of the Northeastern Company, its servants or employés. To make the fault plausible or reasonable will not suffice. It must also show in what manner the Eastern Railroad Company is responsible to him for the fault or negligence of its lessor.
In the answer of the Northeastern Railroad Company is the distinct and specific averment; ‘ ‘ that no plank was left by it, or its agents, where it could have been dragged or fallen on the track; and if such plank was the cause of the engine * * * being thrown from the track * * * such plank could only have been placed there by design and with malice; and that it was not so placed by any person over whom this respondent could, or did, exercise control, or authority, or whom it could have prevented from thus acting.”
It thus appears that the issue of fault, or negligence of that com-, pany, vel non, is squarely made, and must be as squarely met. It involves a question of fact as to whether the accident happened through ,the fault or negligence of the company’s employés, and a question of law as to whether the company is responsible for injury *389 inflicted by the independent act of some third person, which intervened between the defendant’s negligence and the plaintiff’s injury, and which was the direct and immediate cause of the accident and the injury.
An attentive and pains-taking examination of the record discloses the following state of facts:
The only eye witness of the accident was a lady of the name of Mrs. Mary Davis, who resides about three hundred yards from the railroad track, at the point where it happened. She saw the train from her front gallery at the moment the engine turned over. It was between the hours of 6 and 7 o’clock A. m. when the accident happened. She states that another train had passed down the road in the direction of New Orleans about half an hour before the accident happened, and that the wrecked train was going in the same direction. That during this interval of time she saw a timber wagon or carry-log pass over the dirt-road crossing, hauling logs toward Pearl river, and. being driven by a person of her acquaintance disconnected with either of the defendant companies.
Several witnesses were interrogated in reference to the locus in quo and the immediate cause of the accident, between whose statements there appears, at first inspection, to be an irreconcilable conflict, but which disappears entirely when the point of time at which the different witnesses made their respective examinations is taken into-consideration.
The superintendent of the Ba§t Louisiana road was a passenger on the derailed train, and made an examination immediately after the accident, and saw the plank that caused it, and states that one end rested on the track, and a part of it had been mashed or ‘ ‘ chewered ” up by the wheels of the engine passing over it. That the other end was twelve or fifteen feet distant from the dirt-road crossing, as at first seen. He describes it as being of some sixteen to eighteen feet in length, three inches in diameter, and nine inches in width, and of sound heart-pine timber, which had been in the road crossing for a year or more. He states that he, aided by two other persons, lifted it up and ranged it along side of and parallel with the railroad track, and several feet distant from the original position it occupied when he first saw it; says that the edges of this plank had been worn round by carry-logs and wagons- passing over it. States that from his observation and knowledge of the *390 location of this plank, it was, in his opinion, impossible for it “to have been pushed into the position it was found by any wagon or other vehicle passing along the road over the crossing.”
The auditor and passenger agent of same company was also a passenger on that train, and likewise made an examination.
He it was who made the model exhibited to the court as illustrating the situation and surroundings of the wrecked train. He describes the little ^mounds of loose sand which had been dropped on either side of the track for the purpose of elevating the road bed to be of the average height of eighteen inches to two feet. In other respects this witness substantially confirms the statement of the superintendent. He says his examination was made within ten minutes after the happening of the accident.
These are the two principal witnesses of the defendant, but their evidence is corroborated in its most material part by one of plaintiff ’s witnesses — also an employé of same company — who states that immediately after the accident occurred he went up the road with a flag to stop an expected train, and when he had returned he examined the locus and found ‘ ‘ the plank lying alongside the track at the railroad crossing.”
This statement is chiefly antagonized by an employé of the Northeastern company, who states that at the time of the occurrence he was working at a gravel pit on Pearl river, about a mile and a quarter from the place where the accident occurred. Says that it was about a half an hour afterward that he was informed of it and went up there, and in his examination he says:
“I saw somebody had taken it” — the plank — “off the road crossing which was in bad condition, and had not thrown it out far enough, but had left one end on the public road; and right at one end of the plank I saw the print of a carry-log wheel. I know that is what wrecked the train. ’ ’
This witness makes about the same estimate of the size, length and quality of the plank as other witnesses have done. This witness is not supported in the statement quoted above by a solitary witness of the eleven .interrogated. That of the engineer of the derailed train does not support it. He says his examination was made some fifteen minutes after the accident, and subsequently to that made by Messrs. Poitevent and Ferguson. Says he saw some planks at a little distance away, and one of the crossing planks near by, which *391 looked like the train had run over it. States that one end of that plank was about two or three feet from the wagon road, but is not quite certain whether “ it rested on the hill or in the bottom.”
In corroboration of the evidence of the defendant’s other witnesses, a wagon driver — in no way connected with defendants or either of them — is placed upon the stand, and who, in substance, states that on the day previous to the occurrence he passed over the dirt road driving his wagon, and found thereon several planks lying loose, and on returning that afternoon he found the planks lying in a two -foot ditch, in a pile near the railroad track. Another wagon driver testifies that on passing the road the day previous to the accident he found the planks thereon, and with the assistance of another man removed them, and put them in the ditch, at a distance of five or six feet from the public road.
After the wreck these two witnesses visited the train and they state that the plank which had been separated from the pile was in a position nearly parallel to the railroad, the end of it nearest the dirt road being six or eight feet distant from it. Another witnesss says alongside of the two planks remaining in the ditch there was an impression of the third one in the sand.
From this summary of the evidence it is our conclusion, that the plaintiff’s theory that one end of the loose planks had been left negligently or carelessly resting on the dirt-road crossing by some of defendant’s workmen, and that a passing carry-log running over it had tilted the other end of it upon the track and thus caused the accident is without substantial foundation. Indeed, it appears quite impossible that any vehicle passing one wheel over one extremity of a three-by-nine inch pine plank, of sixteen to eighteen feet in length, could have thus tilted the other extremity up an incline of several degrees upon the track. Even had such a feat been possible, how is it possible that the plank was not again tilted in a different direction by the blow it received from the engine’s wheel?
But conceding for the argument all that is contended for by plaintiff’s counsel, how can it be plausibly or reasonably argued that the Northeastern Railroad Company should have been sufficiently on the qui vive to have detected and removed this impediment from its track, within the brief half hour which elapsed between the passing of its train and that of the East Louisiana road; and that for its neglect in not so doing it has laid itself liable for plaintiff’s *392 damages. We do not think that its responsibility can be so extended. For had any responsible member of that company occupied the exact position of Mrs. Mary Davis, he would have been justified, in our opinion, in believing the track was free of any obstruction', though in point of fact it was not.
Let us suppose that some other theory in reference to the manner in which the loose plank was cast upon the track be adopted- — -the workmen and employés of the Northeastern Company having been primarily at fault in not spiking this plank down — and yet liability can not be placed upon them. For the fact is, as shown by the record, that neither of the defendants, their servants or employés either placed the loose plank upon the track or left it loose upon the dirt-road crossing of the track. But it is shown by the record that the servants of the Northeastern Company, carelessly or negligently, left three loose planks near the crossing, and one of them was cast upon the track by some third person, or by means of some extraneous force or cause unknown. In order that an employer be held liable for an injury inflicted, the damages must be both the natural .and proximate consequence of the act complained of, and the direct and not remote result of the defendant’s wrong.
For, Mr. Weeks says, “whenever there intervenes the independent act of a third person, between defendant’s negligence and the injury sustained, and it affects the result, and is the immediate cause of the injury, the plaintiff can not recover against the original wrongdoer.” Damnum Absque Injuria, Secs. 115, et seq.
Mr. Wharton affirms this principle, and says: “Supposing that if it had not been for the intervention of a responsible third party, the defendant’s negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff? This question must be answered in the negative, for the general reason that casual connection between negligence and damage is broken by the interposition of independent responsible human action." Law of Negligence, Sec. 134.
It was maintained in Fairbanks vs. Ker, 70 Penn. St. 86, the court announcing “as a general rule one is answerable for the consequences of his faults only so far as they are natural and proximate, and may therefore be foreseen by ordinary forecast; not for those arising from a conjunction of his fault with circumstances of an extraordinary nature.”
*393 And we take it that our Code is bottomed on this principle. It says that “ every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” R. C. C. 2315.
It also declares that “ we are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable,” etc. R. C. C. 2317.
It says ‘ ‘ masters and employers are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed.” R. C. C. 2320.
As if to put the question beyond cavil or doubt that article declares that:
“ In the above cases responsibility only attaches when the masters or employers, teachers and artisans, might have prevented the act which caused the damage and have not done it.”
These principles were recognized and applied in Williams vs. Pullman Palace Car Company et al., 40 An. 417, and the Louisville, New Orleans and Texas Railroad Company were coerced to respond in damages for the act of the porter of the Pullman Company in assaulting a passenger on its train.
But in neither the Roman law nor in our own has vicarious liability been recognized as actionable. On the contrary the resulting damages have always been held as remote and consequential, and not recoverable.
In this case it is clear 'that the accident occurred through the interposition of an independent responsible human agency, and not from the act of defendant’s servants or employés, and hence plaintiff can not recover.
It is therefore ordered that the judgment appealed from be re•versed, and plaintiff’s demands rejected at his costs in both courts.
Mr. Justice Poché dissents from the opinion and decree of the majority and will file his reasons later.